CRON v. GOODYEAR TIRE & RUBBER
CO., Inc.

Civ. A. No. 308.

District Court, M. D. Tennessee,
Nashville Division.

April 28, 1943.

C. Beverley Briley, of Nashville, Tenn., for plaintiff.

F. A. Berry (of Bass, Berry & Sims), of Nashville, Tenn., for defendant.

DAVIES, District Judge.

This action having been tried by the court, with a jury sitting in an advisory capacity, the court hereby makes the following findings of fact and conclusions of law, incorporating in such finding the advisory answers of the jury, which are as follows:

Advisory Answers of Jury in Form of Special Verdict on Issues of Fact

1. Did the plaintiff, S. M. Cron, spend more than twenty (20%) per cent of his hours in work of the same nature as that performed by the other employees in the retreading department of the defendant, Goodyear Tire & Rubber Company, Incorporated?

Answer by Jury: No.

2. Whether during the period from October 1938 to September 1941, the defendant shipped in interstate commerce from the retread plant tires which had been recapped, retreaded, repaired or cured, to the extent of three to five tires daily as claimed by plaintiff, or shipped two hundred fifteen passenger retreads, thirty-four truck retreads, one hundred seventy-six cured tires, and no repaired tires, as claimed by the defendant?

On the above issue of fact, we the Jury find in favor of the defendant.

3. Did the plaintiff have information as to the shipping of tire carcasses into and out of the retread plant, and where such tires were to be sent, either from written directions attached to the tires, or from other information supplied him?

Answer by Jury: No.

1014

### Findings of Fact

Plaintiff is a resident of Davidson County, Tennessee, and worked for the defendant from the effective date of the passage of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., to-wit, October 24, 1938, until September 19, 1941; that during this period between October 24, 1938, and September 7, 1940, the proof is not conclusive as to the number of hours worked by plaintiff as no record was apparently kept, but the hours worked from September 7, 1940, each week up to and including the week of September 13, 1941, are agreed upon between the parties, as set out in an Exhibit 1, to the defense. During this period it is agreed that plaintiff received $160 a month from October 24, 1938, to June 1, 1940, and from that date until he left the employ of defendant on September 19, 1941, the sum of $175 a month.

The defendant is a corporation with principal office in Akron, Ohio, and is an affiliate of Goodyear Tire & Rubber Company, a corporation, also with principal office in Akron, Ohio, which is engaged in the manufacture, primarily of automobile tires and tubes, but also in the manufacture of other articles of rubber, one of which is known as "camel backs," and is used in the retreading or recapping of tires. The defendant, an affiliate of the Goodyear Tire & Rubber Company, acts as a sales agent for that company and maintains establishments in most of the States in the Union, and among others, maintains an establishment in Nashville, Tennessee, at the junction of Broad Street and West End Avenue, at 16th Avenue. The defendant sells tires and tubes at retail, and also sells other articles of some 50 various kinds, including automobile accessories, and such things as batteries, radios, phonographs, and the like. The defendant also sells oil and gasoline from pumps in its establishment, and oils, greases and otherwise services automobiles, as is ordinarily done by filling stations. During the period in question from October 1938 to September 1941, the total sales from the Nashville establishment amounted to approximately $781,773, of which $589,986 were retail sales or sales to ultimate consumers, and merchandise sold for $191,337, to dealers or wholesale sales. In addition to these sales and in connection with the plant, defendant maintained a recapping or retreading plant in which worn automobile tires were repaired by having additional rubber placed on the outside by a process known as recapping or retreading, which involved putting thereon a form of rubber known as "camel back", which was glued to a worn casing referred to as "carcass" and affixed thereto by glue, and then being placed in a mould and subjected to heat and pressure, which resulted in a new tread being affixed to the tire, and permitting its further use. Also repairs of damaged tires were made of mere sections of the tires, some of which amounted to a considerable operation, and others were simple operations. During the same period the total sales by the retread plant amounted to $66,645 or approximately .078 of the entire business done by the Nashville establishment.

The plaintiff alleged in his complaint that he worked for defendant during the period in question as foreman of the retread plant, and that as such foreman, he was subject to the provisions of the Fair Labor Standards Act, and as such employee "was engaged in retreading tires and processing materials, a large portion of which was shipped in interstate commerce," and that he was entitled to recover time and a half pay for all overtime worked.

The defendant made four defenses, which were (1) that plaintiff was employed in a bona fide executive capacity or local retailing capacity, (2) that plaintiff was engaged in a retail or service establishment, the greater part of whose servicing was in intrastate commerce, (3) that defendant was not engaged in commerce as defined in Section 3(b) of the Act, and (4) that plaintiff had no connection, and performed no duties in commerce, or the production of goods for commerce as defined in Section 3(b) of said Act.

In regard to defense No. 1, the court finds that plaintiff was: (a) Primarily engaged as the manager of the retread department, a customarily recognized department of defendant; (b) that he customarily and regularly directed the work therein; (c) that he had authority to hire or fire other employees, or his suggestions and recommendations as to such, including any other change of status of other employees, was given particular weight; (d) that he customarily and regularly exercised discretionary powers; (e) that his salary was in excess of $30 a week; and (f) that his hours of work of the same nature as that performed by nonexempt employees exceeded 20% of the hours worked in the.

work week by nonexempt employees under his direction.

The court rejects the finding of the Jury in answer to the first question, and therefore sets aside this finding of the Jury and holds that plaintiff actually did the same work as nonexempt employees for more than 20% of his time each week and does not come within the definition of a bona fide executive.

■ Under the second defense the court finds that the defendant maintained an establishment in Nashville, Tennessee; that while it was the exclusive sales agency of Goodyear Tire & Rubber Company, of which it was an affiliate, that defendant maintained its operation of a nation-wide business, with its principal office in Akron, Ohio, and that while defendant did a general wholesale business, that such wholesale business was usually and primarily conducted from offices other than the Nashville establishment; that in the Nashville establishment there was a storage room in which merchandise was carried on consignment and from which merchandise was shipped primarily and principally on orders from other offices or establishments than the one in Nashville, and the employees of the defendant in charge of said storage room had the exclusive charge thereof, and are not parties to or connected with this case; that the Nashville establishment, as sales were made, would requisition merchandise from this storage room, which were delivered to it, and for which the Nashville establishment was charged. Also, to some extent in a limited area surrounding Nashville, the Nashville establishment sold merchandise at wholesale, which were taken from this stock room for this purpose, but the principal wholesale sales were made from other offices, and no record of same were made in the Nashville establishment, which had no connection therewith; the storage room was wholly separated from the remaining part of the establishment by barriers, and was in charge of a stock clerk, and the records pertaining to this stock room were not kept in Nashville, but in Atlanta, Georgia. The court finds that as the defendant was an office or agency of a corporation, which was the exclusive sales agency of Goodyear Tire & Rubber Company, that it is not a retail or service establishment, and is not entitled to the exemptions provided by Section 13(a) (2) of the Fair Labor Standards Act.

The court finds that establishments were maintained by the defendant in other States similar to the one in Nashville, and that retreading was ordinarily carried on in such other establishment in other states; that retreading and recapping was done by the defendant usually and ordinarily in the nearest plant, and that worn tires or carcasses were not shipped from other States to Tennessee to be serviced there and returned to such other States, and that a negligible amount of such material was shipped to Nashville on account of unusual or special reasons, that such shipment was not a part of the business regularly engaged in by the Nashville establishment, which did not manufacture or service goods in interstate commerce, and such articles as actually were shipped or serviced were wholly incidental, due to special and unusual circumstances, and the amount thereof was negligible.

■ Under the third and fourth defenses the court finds that the duties of plaintiff were primarily in the retread plant, of which he was in charge, and which plant recapped, retreaded, repaired or cured tires. The court finds that of the entire business done by the retread plant for the period in question, amounting to approximately $66,645, only about 2½% of this business moved in interstate commerce; that these movements in interstate commerce were not to any extent regular, but would cease for some months at a time, and were made sporadically for unusual causes, such as curing tires on a machine of unusual size, and the shipment of some finished tires to points outside of the State, where some sudden emergency demanded such shipment. The court agrees with and accepts the second answer of the jury, and finds that the amount of goods from the retread plant which actually moved in commerce, as defined by said act, was negligible, and not sufficient to constitute interstate commerce, and that plaintiff had no connection and performed no service in connection with interstate commerce within the meaning of the Fair Labor Standards Act.

The court agrees with and accepts the third answer of the jury and finds that plaintiff did not have information or sources of information to determine what goods moved in interstate commerce.

### Conclusions of Law

Defendant is not a retail establishment within the meaning of the exception of the

Fair Labor Standards Act, nor does the plaintiff qualify as working in an administrative or executive capacity to the extent excepted by the Act, but the employment of the defendant in Nashville was primarily and principally in intrastate commerce and such a small percentage of goods on which the plaintiff worked passed into interstate commerce it cannot be said that the defendant had any intention that its goods from its retread plant would move in interstate commerce or that it was engaged in interstate commerce or the production of goods for interstate commerce.

In view of the court's finding that the plaintiff was not engaged in interstate commerce or in the production of goods for interstate commerce, judgment will be entered in dismissing the complaint against the defendant and assessing the costs of this cause against the plaintiff.

Judgment will be entered accordingly.