**SAPP et al. v. HORTON'S LAUNDRY, Inc.**

**Civil Action No. 433.**

District Court, N. D. Georgia,
Rome Division.

Jan. 18, 1944.

James Maddox, of Rome, Ga., for plaintiffs.

Barry Wright and Carlton Wright, both of Rome, Ga., for defendant.

UNDERWOOD, District Judge.

The above case came on regularly for trial and was tried to the Court without a jury.

Claudie Sapp, Carrie Dean, Lilla Dozier and Laura Cheeks, hereinafter called "plaintiffs," together with a number of others who dismissed their petitions prior to trial, sued defendant, an operator of a laundry in Rome, Georgia, under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., to recover alleged unpaid minimum wages, overtime compensation and additional amounts as liquidated damages and attorney's fees.

Findings of Fact.

Plaintiffs claim that while working for defendant they were engaged in the production of goods for interstate commerce and were entitled to the benefits of the Fair Labor Standards Act; that the work that they were engaged in was part of the process of manufacture of goods which afterwards moved in interstate commerce.

There were three classes of goods in the processing of which plaintiffs claim they aided, chenille bedspreads, laundry done for soldiers stationed at Camp McClelland in Alabama, and certain bed sheets pressed and folded for Dellinger & Company, a manufacturer of chenille bedspreads.

The only work that plaintiffs allege that they did on the chenille bedspreads was folding them after they had been laundered These bedspreads came into the laundry from two sources, some from manufacturers, who sold them in both interstate and intrastate commerce, and others from the people of Rome for ordinary domestic laundry service.

While plaintiffs testified that they folded bedspreads which were sent in by the manufacturers and which ultimately got into interstate commerce, the testimony showed, and I find, that none of the bedspreads that went into interstate commerce was folded, but only those were folded that were laundered in the domestic service. Plaintiffs, therefore, were not engaged in the production of goods for interstate commerce as far as the bedspreads were concerned.

With respect to the work done on the Camp McClelland laundry, the Court finds

that this was merely a laundry service and had nothing to do with the production of goods for commerce. None of plaintiffs was engaged in the actual interstate transportation of the articles in question, but merely participated in the laundering of them after they were delivered at the laundry. The Court finds, therefore, with respect to this work, that plaintiffs were neither engaged in interstate commerce nor in the production of goods for interstate commerce.

That leaves only to be considered the third class of goods upon which plaintiffs worked. These were certain sheets laundered for Dellinger & Company. These sheets were made of remnants of goods left from the manufacture of bedspreads, such remnants being sewed together into sheets. They were first made by Dellinger & Company for their own employees, but, because of the low price, became popular and later were sold on the market. Comparatively few, however, moved in interstate commerce.

Plaintiffs, with others, pressed and folded some of these sheets. A small number were shipped in interstate commerce and the pressing and folding were done in processing them for such commerce.

The number of sheets, however, that actually were pressed and folded for interstate commerce was negligible and constituted an infinitesimal part of defendant's business and consumed an insignificant part of plaintiffs' work time. There were only thirteen shipments in all. One shipment of twenty-five sheets was made in 1940, six shipments of one hundred and twenty-nine sheets in 1941, and six shipments of twelve hundred and eighteen sheets in 1942. The shipments in 1940 were made in only one week; in 1941 in four separate weeks, and in 1942, in six separate weeks. One of the plaintiffs, Carrie Dean, testified that she could press about forty sheets an hour (Record, page 71), and another plaintiff, Claudie Sapp, testified that she could fold about one hundred and fifty sheets an hour (Record, page 93). The latter further testified that she worked on these Dellinger sheets every week while working in the laundry, although the record shows that work was done on these sheets during only eleven separate weeks of the three-year period, and that besides plaintiffs, a number of others worked on them also. The amount of time, therefore, any particular plaintiff could have worked on these sheets was negligible. The amount received for laundering, pressing and folding these sheets during the whole three-year period amounted to approximately $100 out of a domestic laundry income of around $320,000.

## Conclusions of Law.

■ In order to come within the provisions of the Act, plaintiffs must show by a preponderance of the evidence that a substantial part of their activities related to goods which moved in the channels of interstate commerce. *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460. This they have failed to do. The rule de minimis applies.

Plaintiffs claimed that they worked overtime, but their evidence was most general and no overtime was proved with such definiteness and particularity as would support a judgment therefor, even if liability was present.

■ With respect to their claim for unpaid compensation under the minimum wage provision of the Fair Labor Standards Act, the Court finds that they are not entitled thereto because they did not come within the provisions of the Act, it not having been shown that a substantial part of their time was spent in the production of goods for interstate commerce.

Whereupon, I find for the defendant against the plaintiffs, and it is considered, ordered and adjudged that plaintiffs do have and recover of defendant, nothing.