No. 15,224.

MILE HIGH POULTRY FARMS, INC. *v.* FRAZIER
(157 P. [2d] 125)

Decided March 5, 1945.

Messrs. BARTELS, BLOOD & BANCROFT, Mr. ARTHUR H. LAWS, for plaintiff in error.

Mr. SIMON QUIAT, Mr. SAMUEL S. GINSBERG, Mr. NA-THAN H. CREAMER, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

DEFENDANT in error, hereinafter referred to as plaintiff, alleged that her employment with plaintiff in error, hereinafter referred to as defendant, brought her within the provisions of the Fair Labor Standards Act which became effective on October 24, 1938. Plaintiff alleged that under the provisions of the act there was unpaid overtime, liquidated damages, and attorneys' fees due her, and, accordingly, began an action, on April 14, 1942, to recover a judgment against defendant. Upon the jury's verdict in favor of plaintiff, judgment was entered in the sum of $1,064.08, to review which judgment defendant sues out this writ of error.

Plaintiff alleged that defendant was a corporation engaged in the purchase and sale of eggs, with its principal business established in Jefferson county, Colorado, where she was employed by it to candle eggs. Some of the eggs candled by plaintiff were purchased from without the state of Colorado and some thereof were sold to nonresidents of Colorado.

Plaintiff was first employed by defendant from October 30, 1939, until November 30, 1939, at an hourly wage of forty cents, during which period of time the Fair Labor Standards Act provided a work week of forty-two hours. She alleged that during this period she worked sixty-eight and a half hours over the standard work

week, for which overtime she was entitled to be paid at the rate of sixty cents per hour.

Plaintiff was again employed by defendant on February 20, 1940, and continued in this employment until November 18, 1940, during all of which time her hourly wage was forty cents. From February 20, 1940, until October 24, 1940, the standard work week was forty-two hours, and, thereafter, until November 18, 1940, the standard work week was forty hours. During this period she alleged that she worked four hundred sixty-six and a half hours overtime, for which she was entitled to be paid at the rate of sixty cents per hour.

Plaintiff was again employed by defendant on March 3, 1941, and continued therein until March 31, 1941, during which period she was paid at the rate of forty-seven cents per hour. The standard work week during this period was forty hours, and she alleged that she had worked seventy-five hours overtime, for which she was entitled to receive seventy and a half cents per hour.

Plaintiff alleged, and defendant denied, that she was "engaged in commerce" or "in the production of goods for commerce," as those terms are used in the Fair Labor Standards Act.

If the jury was correctly instructed as to the law applicable to the case and found that plaintiff was "engaged in commerce" or "in the production of goods for commerce," the judgment was right and must be affirmed; otherwise reversed. Accordingly, the question for our determination is whether the instructions of the court correctly stated the law applicable to plaintiff's action under the Fair Labor Standards Act.

It is evident that the jury gave full credit to plaintiff's evidence, and we shall do likewise.

Plaintiff's evidence may be thus summarized: There were from five to eight of defendant's employees engaged in the same general character of work with plaintiff. They daily candled from one hundred and ninety

to two hundred and fifty cases of eggs, forty or fifty of which were candled for the trade and one hundred and fifty to two hundred of which cases were candled and placed in storage. During the periods of plaintiff's employment, defendant sold in interstate commerce a weekly average of fifteen or twenty cases of eggs. Some of the eggs purchased by defendant came from outstate; plaintiff's evidence being that about one-fourth of the eggs which she candled were outstate purchases. Storage eggs were recandled before sale. Outstate shipments of eggs is admitted by defendant, although not to the extent testified to by plaintiff.

Mathematically, according to plaintiff's evidence, she, with some four to seven other employees, candled eleven hundred and forty to eighteen hundred cases of eggs per week. If plaintiff did her fair share of this work—and there is no evidence indicating otherwise— she would have candled from two hundred and eighty to three hundred and sixty cases of eggs each week. The average outstate shipment of eggs by defendant during plaintiff's employment was from fifteen to twenty cases per week, so that plaintiff, doing her fair share of the work, would candle from three to four cases of outstate eggs weekly.

Computed, plaintiff's employment, in connection with outstate shipments made by defendant, was, in any event, slightly more than one per cent of her work during the periods of time involved.

The pertinent provisions of the Fair Labor Standards Act are:

"§206. Minimum wages; effective date

"(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

"(1) during the first year from the effective date of this section, not less than 25 cents an hour,

"(2) during the next six years from such date, not less than 30 cents an hour,

\* \* \*

"§207. Maximum hours

"(a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date,

"(3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

\* \* \*

"§216. Penalties; civil and criminal liability

\* \* \*

"(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. \* \* \* The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Title 29, U.S.C.A., p. 439.

There are six specifications of points upon which defendant relies for a reversal. We shall consider only one of these and that is the court's instruction number five, given over defendant's objection. Instruction number five reads as follows: "You are instructed that in determining the issue as to whether or not the defend-

ant as employer and the plaintiff as employee, were engaged in interstate commerce during the period that plaintiff was employed by the defendant, you should determine only, from a preponderance of the evidence, if the defendant in the conduct of its business, received eggs from beyond the borders of the State of Colorado, and whether the defendant in the regular prosecution of its business shipped eggs beyond the borders of the State of Colorado, and if you find from a preponderance of the evidence that the defendant did so ship and receive eggs, and if you further find from a preponderance of the evidence that the plaintiff, during her period of employment, candled, handled or packed the eggs so received and shipped, then you are instructed that the defendant was engaged in interstate commerce and the plaintiff was employed in the production of goods for interstate commerce."

By this instruction the jury is charged that if defendant received eggs in commerce, and shipped eggs in commerce, and plaintiff candled some of the eggs so received and shipped, then plaintiff was engaged in "interstate commerce" or "in the production of goods for interstate commerce," and, therefore, entitled to the benefits of the Fair Labor Standards Act. The language of this instruction is such as to amount to a directed verdict for plaintiff because, under the evidence, there was no doubt — and it was in fact admitted — that defendant received eggs in commerce and shipped eggs in commerce, and there was no doubt —it being likewise admitted—that some of the eggs so received by the defendant and some so shipped by defendant were candled by plaintiff.

■ The fact that defendant purchased eggs from without the State of Colorado, which were thereafter candled and a large proportion of which were placed in storage; would not bring plaintiff within the provisions of the Fair Labor Standards Act, entitling her to overtime wages, with liquidated damages, and attorneys'

fees. This has been determined in *Bock v. Hoffman,* 110 Colo. 73, 130 P. (2d) 691, the syllabus, supported by the opinion, reading: "Where goods are ordered and shipped in interstate commerce to meet the anticipated demands of customers without specific orders therefor, the interstate commerce ceases when the goods come to rest in the warehouse in the state of destination, and an employee of the consignee there engaged in handling, wrapping, packing and preparing such goods for shipment in the state, is not within the wage and hour provisions of the federal Fair Labor Standards Act."

"So handlers of goods for a wholesaler who moves them interstate on order or to meet the needs of specified customers are in commerce, while those employees who handle goods after acquisition by a merchant for general local disposition are not." *McLeod v. Threlkeld,* 319 U.S. 491, 63 Sup. Ct. 1248, 87 L. Ed. 1538.

Instruction number five obliged the jury to consider, in its deliberations, the fact that defendant purchased eggs from without the State of Colorado. The eggs purchased by defendant from outside were not so purchased to fill specific orders but were purchased in anticipation that orders would be received for them. These outstate shipments came to rest when they were received at plaintiff's place of business, and commerce then definitely terminated.

Our determination that the eggs came to rest finds support in numerous federal cases, citations to which we deem unnecessary.

Congress did not exhaust its full regulatory powers in the enactment of the Fair Labor Standards Act. It could have made, if it deemed it legislatively wise so to do, the provisions of the act equal in coverage to that of the National Labor Relations Act and other similar federal legislative enactments.

If plaintiff is to prevail herein, the jury must find, as a matter of fact, under correct instructions of the court relative to the coverage of the Fair Labor Standards

Act, that the candling of eggs for interstate shipment brought plaintiff within the provisions of that act.

▇ In connection with these interstate shipments, the jury must find as a matter of fact that plaintiff "was engaged in commerce" or "in the production of goods for commerce," notwithstanding the fact that practically all of the eggs candled by her came to rest, as we have determined, at defendant's business establishment and only a very small proportion thereof were ever shipped interstate. It was the duty of the court to correctly instruct the jury on the law applicable and it was the duty of the jury, under these instructions, to make a determination of fact. So if the instruction given by the court was incorrect, as a matter of law, the judgment must be reversed.

We will consider federal cases which we believe correctly state the law applicable to the factual situation here. It would unduly lengthen this opinion if we were to make a factual statement concerning each case which we cite; consequently, we shall content ourselves with the statement that all thereof are cases in which employees sought to recover wages, liquidated damages, and attorneys' fees, or cases in which the Administrator of the Wage and Hour Division sought injunctive relief to prevent violations of the Fair Labor Standards Act.

We shall limit our citations to some of the numerous cases where it was found that the Fair Labor Standards Act did not apply because the employees' work in connection with interstate shipments was either so tenuous, incidental, unsubstantial, or inconsequential as to not entitle them to the benefits of the act.

"If the work of the employees has only the most tenuous relation to, and is not in any fitting sense 'necessary' to, the production, it is immaterial that their activities would be substantially the same if the employees worked directly for the producers of goods for commerce." *Kirschbaum Co. v. Walling,* 316 U.S. 517, 62 Sup. Ct. 1116, 86 L. Ed. 1638.

"We do not agree with the District Court that none of the employees is engaged in commerce or in the production of goods for commerce or with the Administrator that all employees of all warehouses are within the Act. The duties of each must be looked to, wherever he may work, to ascertain whether a *substantial* part of his labor is in commerce, in production of goods for commerce or in an occupation necessary to production of such goods." (Italics ours) *Walling v. Goldblatt Bros.,* 128 F. (2d) 778.

"The percentage of the employer's business intrastate as compared with that interstate proves little. The question must be whether the work of the particular employee for the time in question is in commerce or in the production of goods for commerce. His whole time and work need not be thus in commerce, because the Act does not make any distinction of that sort. If a *substantial* part of his work is in commerce or in producing goods for commerce, he must be dealt with according to the Act." (Italics ours) *Fleming v. Jacksonville Paper Co.,* 128 F. (2d) 395.

*Fleming v. Jacksonville Paper Co., supra,* was reviewed by certiorari, and in the opinion we note: "The fact that all of respondent's business is not shown to have an interstate character is not important. The applicability of the Act is dependent on the character of the employees' work. *Kirschbaum Co. v. Walling, supra,* p. 524. If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the Act. Here as in other situations (*Kirschbaum Co. v. Walling, supra,* p. 523) the question of the Act's coverage depends on the special facts pertaining to the particular business." *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 63 Sup. Ct. 332, 87 L. Ed. 460.

"Since all of these four companies did intrastate business as well, it is necessary to examine as to which

employees of each devoted such *substantial* portion of their time and efforts to this interstate business as to bring them within the Act.

\* \* \*

"The evidence here is entirely barren as to whether the same truck drivers handle all of this merchandise indiscriminately or whether certain drivers do the intrastate hauling while others do the interstate. We hold that such as do a *substantial* amount of hauling in interstate merchandise within a week are engaged in interstate commerce (United States v. Erie R. Co., 280 U.S. 98, 50 S. Ct. 51, 74 L. Ed. 187; Baltimore & O. S. W. R. Co. v. Settle, 260 U.S. 166, 43 S. Ct. 28, 67 L. Ed. 189; Phil. & R. R. Co. v. Hancock, 253 U.S. 284, 40 S. Ct. 512, 64 L. Ed. 907) and that any who do not are not." (Italics ours) *Walling v. Mutual Wholesale Food & Supply Co.,* 141 F. (2d) 331.

"It was expressly held that not 'all phases of a wholesale business selling intrastate are covered by the Act solely because it makes its purchases interstate,' that 'The applicability of the Act is dependent on the character of the employees' work,' and that it does apply 'if a *substantial* part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described [i.e., if there was "a practical continuity of movement of the goods until they reach the customers for whom they are intended"]."

\* \* \*

"We have thus reviewed the cases plaintiff cites, not because it has seemed to us that the record presents any real question, but to make sure that even the most liberal interpretation of the Fair Labor Standards Act— and we agree with plaintiff that the tendency of judicial decisions is toward liberal interpretation—could possibly include plaintiff and his fellows within the coverage of the Act. The fact situation is so simple that it

ought not to be necessary to go beyond the text of the Act and the application of elementary principles. These employees claim the benefits of the Act. The benefits of the Act are for employees engaged in interstate commerce. These employees, therefore, must have proved that they were engaged in interstate commerce or that 'a *substantial* part of [their] activities' was in interstate commerce. They only proved that a very *incidental* part of their activities was in such commerce. They failed to make a case." (Italics ours) *Schwarz v. Witwer Grocer Co.*, 141 F. (2d) 341.

"It appears that only five per cent of the sales of the appellant are to interstate customers. It also appears that the appellant has ten to fifteen employees performing intra- and interstate functions. If the functions in connection with sales of commodities to out-of-state customers were equally divided between ten employees then the interstate activitiy of each employee would touch only one-half of one per cent of the business of appellant. If the five per cent interstate business were equally handled by the fifteen employees, then the interstate activity of each employee would affect only one-third of one per cent of the business, as measured in money, and since the Court is not concerned with trifles its injunctive processes would hardly be called forth unless some of the employees have been engaged for a *substantial* portion of their time in these interstate activities." (Italics ours) *James V. Reuter v. Walling*, 137 F. (2d) 315.

We are mindful of the fact that certiorari was granted in this case, 320 U.S. 831, 64 Sup. Ct. 205, 88 L. Ed. 118, and that subsequently, on motion to recall the writ of certiorari, the judgment of the circuit court of appeals was vacated and the judgment of the district court reinstated. This action was because of some unusual circumstances, and, as we view it, is not a determination that the opinion of the United States Court of Appeals

was incorrect. 321 U.S. 671, 64 Sup. Ct. 826, 88 L. Ed. 761.

"When goods once enter the channels of interstate commerce they thereby acquire an interstate status which continues until the interstate journey ends and they come to rest at the point of their intended destination, and if a substantial part of an employee's services have to do with the movement of these goods, or is so closely related thereto as to be practically a part of it, such employee is 'engaged in commerce' within the meaning of the Act."

\* \* \*

"The complaint does not specifically allege that the whole or a *substantial* part of their duties were thus devoted and the facts when developed either upon the trial of the case or by appropriate and permissible pleadings may show that the unloading of the equipment, or the preparation of the same for shipment was an *insubstantial* and *incidental* part of their duties and consequently bore no substantial relationship to the movement of the goods in commerce—in which event the Act is inapplicable to the appellants. But we cannot assume these narrow facts without violence to the liberal construction of pleadings which we must accord the complaint, rather we should resolve the uncertainties in favor of the cause of the pleader and permit him to prove the claim he has stated." (Italics ours) *Clyde v. Broderick,* 144 F. (2d) 348.

"The question of the Act's coverage depends on the special facts pertaining to the particular business, the applicability of the Act being dependent upon the character of the employee's work.

"Unless a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce is affected, he is not covered by the Act." *Ouendag v. Gibson,* 49 F. Supp. 379.

"Under the third and fourth defenses the court finds that the duties of plaintiff were primarily in the retread

plant, of which he was in charge, and which plant, recapped, retreaded, repaired or cured tires. The court finds that of the entire business done by the retread plant for the period in question, amounting to approximately $66,645, only about 2½% of this business moved in interstate commerce; that these movements in interstate commerce were not to any extent regular, but would cease for some months at a time, and were made sporadically for unusual causes such as curing tires on a machine of unusual size, and the shipment of some finished tires to points outside of the State, where some sudden emergency demanded such shipment. The court agrees with and accepts the second answer of the jury, and finds that the amount of goods from the retread plant which actually moved in commerce, as defined by said act, was *negligible,* and not sufficient to constitute interstate commerce, and that plaintiff had no connection and performed no service in connection with interstate commerce within the meaning of the Fair Labor Standards Act." (Italics ours) *Cron v. Goodyear Tire & Rubber Co.,* 49 F. Supp. 1013.

"What then must be the character of the employee's activity? It must be characterized by two elements, viz., first, he must be engaged in interstate commerce or in the production of goods for commerce, second, he must devote a substantial part of his time in interstate commerce or in the production of goods for commerce.

\* \* \*

"\* \* \* The average of 98.44% of goods shown by the stipulation to have been sold at retail in Ohio was not goods in interstate commerce, and any work done on such goods at defendant's warehouse was not work in interstate commerce.

"It was in work upon this 98.44% of goods that the plaintiff and intervening plaintiffs devoted 95% of their time. The remaining 5% of their time was devoted to work on the 1.56% of goods in interstate commerce.

The Court is of the opinion that this work in interstate commerce did not constitute a substantial part of the the employees' time." *Vogelpohl v. Lane Drug Co.,* 55 F. Supp. 564.

"In order to come within the provisions of the Act, plaintiffs must show by a preponderance of the evidence that a substantial part of their activities related to goods which moved in the channels of interstate commerce. *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 572, 63 Sup. Ct. 332, 87 L. Ed. 460. This they have failed to do. The rule de minimis applies.

\* \* \*

"With respect to their claim for unpaid compensation under the minimum wage provision of the Fair Labor Standards Act, the Court finds that they are not entitled thereto because they did not come within the provisions of the Act, it not having been shown that a *substantial* part of their time was spent in the production of goods for interstate commerce." (Italics ours) *Sapp v. Horton's Laundry,* 56 F. Supp. 901.

In keeping with the decisions of the federal courts upon the question herein, we are of the opinion that the trial court committed prejudicial error in the giving of its instruction number five. The phrases "engaged in commerce" or "in the production of goods for commerce" should be qualified by the word "substantially" or some similar qualifying word; otherwise the Fair Labor Standards Act would be given a coverage greater than that permitted by the decisions of the federal courts, and this we shall not do.

The judgment is reversed and the cause remanded for further proceedings in harmony herewith.