**BURKE et al. v. LECRONE–BENEDICT WAYS, Inc.**

No. 4248.

District Court, E. D. Michigan, S. D.

June 15, 1945.

Supplemental Opinion July 31, 1945.

884

Robbins & Schuur, of Detroit, Mich., for plaintiff.

Clark, Klein, Brucker & Waples, of Detroit, Mich., for defendant.

PICARD, District Judge.

This is an action brought under the Fair Labor Standards Act by two former employees of defendant who were in its bookkeeping or accounting department. It appears that in 1943 defendant, an Ohio corporation, purchased the assets of Great Central Transport Corporation, a Michigan company, and moved its headquarters to Detroit. The facts show that books of defendant were at least three months behind and it was necessary to bring these delinquent records up to date so that defendant could submit its petition to the Interstate Commerce Commission for approval of its legal change. Due to the volume of work and the inability to secure local help, all employees of the bookkeeping and accounting department worked nights on many occasions, but these two petitioners had, admittedly, a slightly different status than the clerks, all of whom were paid overtime. The company claims that both petitioners are exempt from overtime pay because they were acting in an executive or an administrative capacity.

There are some facts general to both plaintiffs as they worked practically the same time during the summer months of 1943 and in the same office. They also drew the same pay—$75 per week—although plaintiff Burke started at $65 weekly and received some hotel expenses and later some house accommodations which petitioner DeLaForce did not receive. There were occasions when they worked all night and frequently they worked until 10 or 11 p. m. It is clear from the testimony that generally when they did work all night they would not show up the next day or at least until late morning or early afternoon and they were not docked for day-time hours when they were absent. Both were more or less recognized as above the book-keeper type and defendant company was relying on both of them—more on Burke than DeLaForce—to get the books in shape. Testimony of the amount of work and hours claimed became at times almost fantastic, petitioners on one occasion allegedly working three days and two nights without sleeping. But the claim of overtime is practically all based either on records of the Penobscot Building showing who came in at night and what hours they left or on plaintiffs' alleged memory of specific hours. In addition, plaintiffs put in a bill of particulars of hours evidently picked at random from days available which only served to lead petitioners into testifying to unbelievable feats of endurance and devotion to duty. All of which was probably placed before the court with the sole hope that the court might hit a compromise if finding for plaintiffs or such testimony, though exaggerated, might redound to their benefit in some way or other. This only served to weaken plaintiffs' position with the court who wondered how much he could believe of the claimed extra work. Nevertheless we appreciated that long hours had been evidenced and petitioners' zeal in augmentation does not minimize the fact that they did work overtime and if entitled to anything their testimony as to the number of hours would affect only the amount which they should legally receive.

The section of the statute affected is not in dispute. Section 213, Title 29 of the Fair Labor Standards Act provides that certain wage earners are exempt from its provisions, to-wit: "Any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator)" and General Order No. 9 of the Wage and Hour Administrator defines who is and is not an "executive" or "administrator". Briefly these definitions are:

"Executive

"The term 'employed in a bona fide executive capacity' shall mean any employee

"(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(B) who customarily and regularly directs the work of other employees therein, and

"(C) who has the authority to hire or fire other employees on whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change in status of other employees will be given particular weight, and

"(D) who customarily and regularly exercises discretionary powers, and

"(E) who is compensated for his services on a salary basis at not less than $30.00 per week (exclusive of board, lodging, or other facilities), and

"(F) whose hours of work of the same nature as that performed by employees not employed in an executive, administrative or professional capacity do not exceed 20 percent of the number of hours worked in any work week by the employees under his direction; provided that this subsection (F) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

"Administrative

"The term 'employed in a bona fide administrative capacity' shall mean any employee—

"(A) who is compensated for his services on a salary basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities), and

"(B) (1) who regularly and directly assists an employee employed in a bona fide executive or administrative capacity (as such terms are defined in these regulations), where such assistance is nonmanual in nature and requires the exercise of discretion and independent judgment; or

"(2) who performs under only general supervision, responsible nonmanual office or field work, directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment; or

"(3) whose work involves the execution under only general supervision of special nonmanual assignments and tasks directly related to management policies or general business operations involving the exercise of discretion and independent judgment; or

"(4) who is engaged in transporting goods or passengers for hire and who performs, under only general supervision, responsible outside work of a specialized or technical nature requiring special training, experience, or knowledge, and whose duties require the exercise of discretion and independent judgment."

First, it is admitted that the burden of proving that the employee comes within the exemption is on the company. Walling v. Reid, 8 Cir., 139 F.2d 323; Joseph v. Ray, 10 Cir., 139 F.2d 409; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11; Fleming v. Hawkeye Pearl Button Company, 8 Cir., 113 F.2d 52; Snyder v. Wessner, D.C., 55 F.Supp. 971; Kreeft v. R. W. Bates Piece Dye Works, Inc., D.C., 63 F.Supp. 881; and many cases have attempted to define "executive" and "administrative" with rather varying results. The consensus of opinion seems to be, however, that while an administrator is not necessarily an executive, the term "executive" as it works out in practice is broad enough to include one who also has administrative duties, particularly when the border line is so close as to call for decision by the courts.

Petition of James P. Burke, Jr.

In the above case we think that, had petitioner started out to prove that he was an executive, he couldn't have done a better job. He took the place of the man who had been comptroller; he took his office; had a stenographer; sent out bulletins and put his title "Comptroller" or "Head of the Bookkeeping Department" after his name. He supervised the banking and watched the status of the bank account, particularly as to the "warrants", to be ready at a minute's notice to report to Mr. Bridge, his superior. He at least had first contact with the employees who were to come into his department. He talked to them and then made his report to Mr. Bridge and undoubtedly much weight was given to his recommendations. Of course he was a new man on the job and this was a new venture. Mr. Bridge, who was general manager, undoubtedly had to keep a closer contact and control over his subordinates than he probably would after the accounting department got running smoothly. But it appears to us that had petitioner's right to recovery

depended upon his being able to show that he was head of the accounting department, defendant company would have been almost foreclosed by estoppel from denying that he was. That Mr. Burke worked long and hard is unquestioned; but that he contributed any part of his time to actual entries in any of the books of record has not been established by proof. It does not appear that 20 percent of the hours worked by him were of the same nature as that performed by other nonexempt employees. Cron v. Goodyear Tire & Rubber Co. Inc., D.C., 49 F.Supp. 1013. This court gave petitioner Burke every opportunity to introduce this evidence but so far not one entry—other than in the cash running account journal showing bank transactions—appears in any of the books to have been made by James P. Burke even though he was working nights.

■ Applying the test as laid down in General Order No. 9 and the cases Stanger v. Glen L. Martin Co., D.C., 56 F.Supp. 163; Baird v. Associated Piping & Engineering Co., D.C., 61 F.Supp. 970; Lawley v. South, 1 Cir., 140 F.2d 439; Corey v. Detroit Steel Corporation, D.C., 52 F.Supp. 138, we find that Mr. Burke's endeavors meet every one of them and therefore deny his petition.

### As to Edna DeLaForce

■ While we were not overly impressed with Miss DeLaForce's testimony and while she does meet some of the requirements of one employed in a bona fide administrative capacity, it cannot be denied that she did work overtime. She was an administrator in that she got more than $200 a month and she did regularly aid directly and assist employees in a bona fide capacity which work was to some extent nonmanual in nature requiring the exercise of discretion and independent judgment. But it is our opinion that the greater part of her work, perhaps 80 percent of it, was manual. She meets none of the tests of administrator as supplied by the disjunctive nor of executive which are covered in the regulations by the conjunctive. She did the posting and she was very jealous of her work on her books which is understandable. She probably knew as much about bookkeeping as Burke did and after watching her on the witness stand we can appreciate that Burke would have had rather a difficult time hav-

ing her comply with orders with which she did not agree. It is understandable also that she gave some orders to the other girls and while she exercised many of the duties of an administrator, such a large percentage of her work was manual labor that she certainly is not in the class of either executive or administrator.

■ We are not impressed with the ingenious argument in defendant's supplemental brief because the definition referred to from the Regulations says "where such assistance is nonmanual in nature and requires the exercise of discretion and independent judgment". The word "and" which we have emphasized destroys the force of defendant's reasoning and we must reject this as reading into the regulation something that is not there. As we understand the English language as used here it is not ambiguous. "Nonmanual" is one qualification and "requires the exercise of discretion and judgment" is another. Manual to us is used in its regular connotation and means physical as to the use of hands in contrast to mental exertions only. And where one is present the exemption vanishes so far as (B) (1) is concerned.

As to the amount that she should recover we recognize that we cannot be too dependent upon the testimony as given. Perhaps the most accurate record is the Exhibit MM filed by the Department showing the Penobscot Building register as affecting Edna DeLaForce's overtime. We also believe that the case of Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 applies.

Therefore because we feel that she does not come within the exemption and because the admitted facts, as evidenced by the Penobscot Building register and the testimony of others including plaintiff, certainly are accurate as to that extent, we hold that plaintiff DeLaForce be entitled to recover the amount of $210.76 as evidenced in that schedule.

### Supplemental Opinion

This court must deny plaintiff DeLaForce's petition for an increase in the amount allowed her in our filed opinion.

We were never impressed by Miss DeLaForce's testimony. Had we followed it in toto we would have made no allowance at all. We went on the over-all picture of the relative work of Burke, DeLaForce, and the other employees. Even if she did

testify that she was to receive $75 per week for a 40 hour week—the facts showed that she worked irregularly and when she took three and four hours off during the daytime she did not deduct them—and this court did not have the facts of all these instances and so couldn't.

We think that her contract was $75 per week—and we have penalized the defendant to some extent by the allowance made, justifying it, however, on what we believe facts to warrant and the burden of proving exemption which rests upon defendant.

■ Plaintiffs' counsel is, however, allowed an attorney's fee of $750.