No. 15,019.

Bock v. Hoffman doing business as Hoffman Wholesale Meats.

(130 P. [2d] 691)

Decided October 19, 1942.

Mr. Philip Hornbein, Jr., Mr. Theodore Epstein, for plaintiff in error.

Mr. O. Otto Moore, Mr. Albert T. Frantz, for defendant in error.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

Suit by plaintiff in error, plaintiff below, to recover additional wages from defendant, who was "engaged in the purchasing and procuring from original producers and processors within the state of Colorado and outside the state of Colorado, of meats and meat products for resale at wholesale," on the ground that defendant was engaged in interstate commerce, and, therefore, subject to the wage provisions of the Fair Labor Standards Act of 1938 (29 U.S.C.A., §§206, 207). A motion to strike certain portions of the amended complaint, and a demurrer, were filed by defendant which were sustained by the trial court, and, after plaintiff's election to stand on his amended complaint, judgment of dismissal was duly entered, the dismissal being based upon the ground that defendant was not engaged in interstate commerce. Reversal is sought on a writ of error.

The amended complaint, so far as pertinent to the principal issue, reads as follows:

"Comes now the plaintiff and, complaining of the defendant, states and alleges as follows:

"1. That the defendant at all times mentioned herein, and now, was and is doing business within the City and County of Denver, State of Colorado, under the firm name and style of Hoffman Wholesale Meats, and has maintained, and now maintains, his place of business in said City and County of Denver.

"2. That at all times mentioned herein, and now, the said defendant has been engaged in the purchasing and procuring from original producers and processors within the State of Colorado and outside the State of Colorado, of meats and meat products for resale at wholesale. That a substantial portion of the articles purchased by the defendant for resale at wholesale are purchased without the State of Colorado and are shipped from points of origin without the State of Colorado to the place of business of the defendant within the State of Colorado. That each and all of the above sales and shipments of meat and meat products from points of production and origin without the State of Colorado, and the transportation of the said meat brought by the defendant from out of the State of Colorado into the State of Colorado, are by the usual and regular means and instrumentalities of interstate commerce, and said products purchased by defendant as aforesaid are obtained and disposed of by the defendant in the stream of interstate commerce.

"3. That at all times herein mentioned, and now, the defendant was and is engaged in the processing and sale at wholesale of the aforesaid meat products. That the defendant employs workers, who butcher, handle, dress and prepare a part of the aforesaid meat products for resale at wholesale. That a substantial portion of the aforesaid meat products so processed compete with similar products produced in other states than the State of Colorado, and, in the sale and delivery of such products, the defendant competes directly with manufac-

turers, producers and wholesalers of similar and like products in other states.

"4. That the plaintiff was at all times mentioned herein employed by the defendant. That the plaintiff was at all times mentioned herein employed to, and did, handle, wrap, pack and prepare for shipment meat products brought in by the defendant from outside of the State of Colorado for resale at wholesale to dealers and others within the State of Colorado. That the plaintiff was at all times mentioned herein employed to, and did, butcher, handle, process and prepare meat products brought in by the defendant from points outside of the State of Colorado and sold by the defendant at wholesale to dealers and others within the State of Colorado.

"5. That part of the meat products which plaintiff handled were not butchered, processed or changed in any form by the plaintiff or other employees of defendant. That these products were purchased and procured from original producers and processors outside of the State of Colorado and sold without further processing by the defendant at wholesale to dealers and others within the State of Colorado. That the plaintiff handled these aforesaid meat products when they were received at defendant's place of business. That plaintiff wrapped and packed these aforesaid products preparatory to their delivery and sale at wholesale by defendant to dealers and others within the State of Colorado. That the aforesaid meat products were sold by defendant at wholesale in substantially the same form in which he received them from producers in other states.

"6. That other meat products procured by defendant from producers and processors outside of the State of Colorado were cut up into smaller parts by plaintiff and other employees of defendant and sold by defendant at wholesale to dealers and others within the State of Colorado. That other than the cutting up of the aforesaid meat products, there was no further processing or preparing of said meat products.

"7. That meat products procured by defendant from producers and processors outside of the State of Colorado were loaded, prepared for shipment and shipped by plaintiff preparatory to their sale at wholesale to dealers and others within the State of Colorado.

"8. That the plaintiff was engaged in commerce and in the production of goods for commerce within the meaning of section 7 of the Fair Labor Standards Act of 1938, approved June 25, 1938, and which became effective on October 24, 1938, and which has been, since said latter date, in full force and effect."

The applicable provisions of the Fair Labor Standards Act read as follows:

"(a) The Congress hereby finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce.

"(b) It is hereby declared to be the policy of sections 201-219 of this title, through the exercise by Congress of its power to regulate commerce among the several States, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power. 29 U.S.C.A., §202.

* * *

"(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several

States or from any State to any place outside thereof. \* \* \* " 29 U.S.C.A., §203.

" (a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates —

" (1) during the first year from the effective date of this section, not less than 25 cents an hour,

" (2) during the next six years from such date, not less than 30 cents an hour. \* \* \* 29 U.S.C.A., §206.

" (a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce —

" (1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

" (2) for a workweek longer than forty-two hours during the second year from such date, or

" (3) for a workweek longer than forty hours after the expiration of the second year from such date, \* \* \*." 29 U.S.C.A., §207.

\* \* \*

" (b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow

a reasonable attorney's fees to be paid by the defendant, and costs of the action." 29 U.S.C.A., §216.

The only point specified for argument is the alleged error of the trial court in sustaining the demurrer to the amended complaint.

There is nothing in the transcript of the judgment below to indicate just what was the basis of the court's decision, except as already indicated, that the products handled by plaintiff as an employee of defendant were not in interstate commerce.

No particular analysis of the complaint is necessary. While there is direct allegation that the products "are obtained and disposed of by the defendant in the stream of interstate commerce," it is obvious that this is a mere conclusion of law. The allegation that some of the "products * * * compete with similar products produced in other states" is without legal significance here, and the statement that plaintiff "did, butcher, handle, process and prepare meat products" brought in from other states would indicate that their journey in interstate commerce came to rest when deposited in defendant's place of business. This conclusion is fortified by the statement that none of the products were sold outside of Colorado. The mere fact that some of the merchandise ultimately reached the retailers and consumers unchanged in form, we think, does not constitute "continuity of flow" so as to make even that part of the merchandise moving in interstate commerce.

While the recent case of *Jewel Tea Co. v. Williams*, 118 F. (2d) 202, 207, is not controlling, certain language therein is appropriate to the case at hand: "Where goods are ordered and shipped in interstate commerce to meet the anticipated demands of customers without a specific order therefor from the customer and the goods come to rest in a warehouse, the interstate commerce ceases when the goods come to rest in the state. It does not continue until the demand eventuates in the

form of an order and the merchandise is delivered to the retailer.

"The mere fact that an anticipated local transaction causes a movement in interstate commerce is not sufficient to constitute the local transaction a part of interstate commerce. The language of the Supreme Court in *Schechter Corporation v. United States,* 295 U.S. 495, 543, 55 S. Ct. 837, 849, 79 L. Ed. 1570, 97 A.L.R. 947, is apposite:

"The mere fact that there may be a constant flow of commodities into a state does not mean that the flow continues after the property has arrived and has become commingled with the mass of property within the state and is there held solely for local disposition and use. So far as the poultry here in question is concerned, the flow in interstate commerce had ceased. The poultry had come to a permanent rest within the state. It was not held, used, or sold by defendants in relation to any further transactions in interstate commerce and was not destined for transportation to other states. Hence, decisions which deal with a stream of interstate commerce—where goods come to rest within a state temporarily and are later to go forward in interstate commerce—and with the regulations of transactions involved in that practical continuity of movement, are not applicable here."

As was stated by the Supreme Court of the United States in the Schechter case, cited in the Jewell Company case, supra (p. 548): "The persons employed in slaughtering and selling in local trade are not employed in interstate commerce. Their hours and wages have no direct relation to interstate commerce. The question of how many hours these employees should work and what they should be paid differs in no essential respect from similar questions in other local businesses which handle commodities brought into a state and there dealt in as a part of its internal commerce."

Counsel's attempt to distinguish the Schechter case

from the case at bar is based on the assumption that the commerce therein involved was entirely intrastate, but from the facts as stated in the opinion it appears that some of the poultry came from Pennsylvania and New Jersey, so we think the case in point.

In a more recent case, involving a situation very similar to that in the case at bar, the District Court of Appeals of California held that the employee was not engaged in interstate commerce, hence not subject to the Fair Labor Standards Act. *McDaniel v. Clavin*, 128 P. (2d) 821.

The above citations and quotations therefrom, seem to be well in line with what we have heretofore announced on the subject: "Sales completed entirely within a state are not transactions in interstate commerce * * *. When the commodity transported has reached the end of its journey and has been delivered to the consignee it ceases to be a subject of interstate commerce." *People v. Home Oil & Supply Co.*, 95 Colo. 143, 34 P. (2d) 67.

If the construction of the act for which plaintiff in error contends should be adopted, every small packing plant and wholesale company which happens to purchase merchandise out of the state would be subject to its provisions. In our opinion it was not intended to cover so wide a range, and we cannot believe that to benefit one group, it was intended to put the little fellow out of business.

The trial court was right in sustaining the demurrer to the amended complaint.

Judgment affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE JACKSON not participating.