George P. SHULTZ, Secretary of Labor, United States Department of Labor, Appellant,

v.

NATIONAL ELECTRIC COMPANY, Inc., et al., Appellees.

No. 130–68.

United States Court of Appeals
Tenth Circuit.

June 26, 1969.

Rehearing Denied Sept. 22, 1969.

James E. White, U. S. Dept. of Labor, Washington, D. C. (Edward D. Friedman, Acting Sol. of Labor, Bessie Margolin, Associate Solicitor, Robert E. Nagle and Thomas E. Korson, U. S. Dept. of Labor, and Major J. Parmenter, Regional Attorney, on the brief), for appellant.

Edward E. Soule, Oklahoma City, Okl., for appellees.

Before PICKETT, HILL and HICKEY, Circuit Judges.

PICKETT, Circuit Judge.

The Secretary of Labor brought this action to enjoin the appellee, National Electric Company, Inc., and its president, Robert G. Elston, from violating the provisions of the Fair Labor Standards Act as amended, 29 U.S.C. § 201 et seq., and to require payments of overtime compensation due to some employees. The trial court held that the employees in question were not engaged in interstate commerce, and denied the relief sought.[1] We affirm.

The material facts are not in dispute. National Electric, an Oklahoma corporation, was engaged in electrical contracting and in the retail sale to the public of electrical supplies and fixtures.[2] Elston testified that 99% of the corporation's sales of merchandise were retail sales upon which was collected the Oklahoma Sales Tax. No claim is made that any sales by National Electric were interstate. It is stipulated that the corporation regularly received merchandise which was shipped to it from outside the State of Oklahoma and delivered to it at its warehouse and unloaded on its docks by employees of the common carrier making the delivery. The trial court found that the aforesaid deliveries ended the interstate movement of the merchandise and that the corporation's employees who thereafter handled the shipments and mingled it with other merchandise in the warehouse were not en-gaged in interstate commerce within the meaning of the Act. The narrow issue presented here is whether the interstate movement of the merchandise ended at the warehouse dock when it was placed there by employees of the common carrier, or when it was placed in the warehouse by employees of the corporation.

Relying primarily on Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, the Secretary urges that the placing of the merchandise on the warehouse dock was only a temporary halt in the interstate movement of the goods to their final destination inside the warehouse of National Electric. The Jacksonville Paper Company case, however, was concerned with an entirely different factual situation. In that case goods placed in the warehouse were destined to specific customers or purchased to meet the requirements of a pre-existing contract or understanding with the customer. The merchandise merely passed through the warehouse before delivery to the customers for whom the purchases were made. The Supreme Court concluded that the goods having entered the channels of interstate commerce remained in interstate commerce until the trip was ended; that a temporary pause or break in transit did not mean that the goods were no longer in interstate commerce, nor did delivery and passing of title mean that the interstate journey ended at the warehouse if

---

1. Judge Daugherty's well-considered decision is reported in 285 F.Supp. 30.

2. Elston described the corporation business as follows:

"Q. Before you moved. Will you describe just what your business includes? What do you do?

"A. Well, we run a retail electrical store in that we sell lighting fixtures and plugs and fuses and things that people come about electrical stores to buy. We also run an electrical contracting business.

"Q. Do you have a retail showroom?

"A. We do.

"Q. With lamps and so forth on display?

"A. Yes, sir.

"Q. That I could come in and buy?

"A. Yes, sir.
 *      *      *      *      *
"Q. Where do you do your electrical wiring work?

"A. Almost all of it is residential work within the greater Oklahoma City area.

"Q. Do you make any sales outside the State of Oklahoma?

"A. No, sir.

"Q. The complaint in this case alleges that you manufacture or produce goods for Interstate Commerce. Do you ship anything outside the State of Oklahoma?

"A. No, sir.

"Q. Do you do any manufacturing of any kind?

"A. No, sir."

the warehouse was not the final destination of the shipment; that the final destination of the shipments was not the warehouse of Jacksonville Paper Company, but some point beyond; therefore, employees working with the goods were covered by the Act. In Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468, a companion case to Walling v. Jacksonville Paper Co., *supra,* the Court considered a case where the final destination of the shipments was the warehouse. It agreed with the Supreme Court of Maine, under facts similar to those here, "that when the merchandise coming from without the state was unloaded at respondent's place of business its 'interstate movement had ended.' "[3] The following cases have taken the same view: Tilbury v. Mitchell, 5 Cir., 220 F. 2d 757, aff'g W.D.La., 123 F.Supp. 109; Maitrejean v. Metcalfe Const. Co., 8 Cir., 165 F.2d 571; Walling v. L. Wiemann Co., 7 Cir., 138 F.2d 602, 150 A.L.R. 878, cert. denied, 321 U.S. 785, 64 S.Ct. 782, 88 L.Ed. 1077; Walling v. Goldblatt Bros., 7 Cir., 128 F.2d 778, cert. denied, 318 U.S. 757, 63 S.Ct. 528, 87 L.Ed. 1130; Parks v. Puckett, W.D.Ark., 154 F.Supp. 842; Walling v. Bridgeport Tobacco Co., N.D.Ill., 57 F.Supp. 429. In Clyde v. Broderick, 144 F.2d 348, 351, we said:

> "When goods once enter the channels of interstate commerce they thereby acquire an interstate status which continues until the interstate journey ends and they come to rest at the point of their intended destination."

And in Jewel Tea Co. v. Williams, 118 F.2d 202, 207, this court said:

> "(T)he interstate commerce ceases when the goods come to rest in the state."

In Sucrs. De A. Mayol & Co., Inc. v. Mitchell, 1 Cir., 280 F.2d 477, Chief Judge Aldrich, writing for the court, accepted the view that interstate commerce ceases when the goods come to rest, but thought that the Jacksonville Paper Company case extended the interstate trip beyond the unloading point on the dock to the place in the warehouse where the goods were placed upon the shelves with the warehouse stock. With due respect to this distinguished jurist, we are unable to accept those conclusions. While we do not imply that in all cases the unloading or assisting in unloading by employees of the consignee would bring such employees within the Act, it is noted that, as pointed out by the district court, in most of the cases relied upon in Sucrs. De A. Mayol & Co., Inc. and the Secretary here, such employees either unloaded or assisted in unloading the goods from the common carrier at the consignee's place of business. It is also significant that the First Circuit did not refer to Higgins v. Carr Bros. Co., *supra,* or Standard Oil Co. v. Federal Trade Commission, 340 U.S. 231, page 238, 71 S.Ct. 240, p. 244, 95 L.Ed. 239, where the Court in Note 6 construed the Jacksonville Paper Co. and Higgins cases to hold that for the purposes of the Fair Labor Standards Act, "(I)nterstate commerce ceased on delivery to a local distributor."

We hold that the merchandise involved herein was delivered and finally came to rest when it was unloaded on the docks or on the warehouse floor of National Electric. For all practical purposes, the interstate movement then ceased. Any movement thereafter was of a purely local nature. National Electric was then free to place it in its warehouse or dispose of it otherwise. We think that the

---

3. Higgins v. Carr Bros. Co., *supra,* was a review of a decision of the Supreme Court of Maine, 138 Me. 264, 25 A.2d 214. The Supreme Court accepted the following summary by the Maine court of the employer's activities:

> "It buys its merchandise from local producers and from dealers in other states, has it delivered by truck and rail, unloaded into its store and warehouse and from there sells and distributes it to the retail trade. While some of the produce and fruit is processed, much of it is sold in the condition in which it is received. The corporation owns all of its merchandise and makes its own deliveries. It makes no sales on commission nor on order with shipments direct from the dealer or producer to the retail purchaser."

Jacksonville Paper Co. and Higgins decisions compel this result and furnish a practical and understandable rule for the determination of when an interstate shipment ends. It was the intent of Congress to leave the protection of local businesses to the states. Maneja v. Waialua Agriculture Co., 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040; Walling v. Jacksonville Paper Co., *supra*; Duke v. Birchfield, E.D.Okl., 222 F.Supp. 258. Employees "who handle goods after acquisition by a merchant for general local disposition are not" engaged in interstate commerce within the meaning of the Act. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538.

Affirmed.