**Joyce L. PEDREYRA, Plaintiff,**

v.

**CORNELL PRESCRIPTION PHARMA- CIES, INC., a Colorado Corporation, Defendant.**

**Civ. A. No. 77–K–943.**

United States District Court, D. Colorado.

Jan. 22, 1979.

---

938

Leslie M. Lawson, Feiger & Lawson, Denver, Colo., for Joyce L. Pedreyra and her successor, Donald Pedreyra.

Thomas L. Roberts, Walberg & Pryor, Denver, Colo., for Cornell Prescription Pharmacies, Inc.

KANE, District Judge.

## MEMORANDUM OPINION AND ORDER

Plaintiff brought this employment discrimination action alleging that defendant Cornell Prescription Pharmacies, Inc., engaged in certain discriminatory activities, gender-based wage discrimination and retaliatory discharge, which were in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e *et seq.*, and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.*, as amended by the Equal Pay Act of 1963 (1977). Plaintiff was terminated after she filed charges of sex discrimination in 1977 with the Equal Employment Opportunity Commission, the Colorado Civil Rights Commission, and the Wage and Hour Division of the United States Department of Labor. Plaintiff prays for relief in the form of back wages, interest, lost fringe benefits, and attorney's fees and costs.

This cause was filed by plaintiff on October 11, 1977. Plaintiff died on May 26, 1978 and a suggestion of death pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure was filed on June 30, 1978. Without objection from defendant, the court granted a substitution of parties on July 7, 1978 substituting Donald Pedreyra, surviving spouse and representative of the deceased as plaintiff. Joyce L. Pedreyra's employment discrimination action survives under the Colorado survival statute, 13–20–101 *et seq.*, C.R.S.1973. All references hereinafter to "plaintiff" are to Joyce L. Pedreyra.

The following facts are found:

1. Joyce L. Pedreyra received a degree in pharmacy from the University of Colorado in 1953 and became a licensed pharmacist in June, 1954.

2. Defendant, Cornell Prescription Pharmacies, Inc., is a Colorado corporation engaged in the pharmacy business in two locations, the Denver store and the Lakewood store.

3. Plaintiff was employed by defendant as a licensed pharmacist on four separate occasions: (a) from 1963 to November, 1966 (b) from April, 1968 to January, 1969 (c) from March, 1969 to January, 1971 and (d) from January 1, 1973 to June 10, 1977.

4. Plaintiff's claims in this action arise from her employment during the last period, January, 1973 through June 10, 1977.

5. For the pay period February 28, 1973 through April 1, 1974 plaintiff was paid a salary of $1,100 per month while the four male pharmacists employed during the same period earned from $100 to $150 a month more.

6. For the pay period April 17, 1974 through June 10, 1977 plaintiff was paid a salary of $1,150 a month while the male pharmacists employed during the same period earned from $150 to $450 a month more. (One male pharmacist was briefly employed for two months in 1976 at a salary of $1,100 a month.)

7. Defendant employed one other female licensed pharmacist during this period who worked from January 1, 1973 through November, 1973 at a salary of $800 per month.

8. Defendant designated plaintiff as "manager" of defendant's Denver store in reports filed with the Colorado State Board of Pharmacy for the following periods: (a) July 2, 1966 through November 30, 1966;

(b) July 1, 1973 through May 13, 1974; and (c) May 25, 1976 through March 24, 1977.

9. While employed by defendant, plaintiff served as a preceptor and was responsible for supervising intern and extern pharmacists for defendant.

10. Plaintiff filed a charge of sex-based wage discrimination with the Equal Employment Opportunity Commission (EEOC) on January 1, 1977.

11. On January 26, 1977 EEOC notified plaintiff that her charge would be deferred to the Colorado Civil Rights Commission for 60 days. EEOC also forwarded plaintiff's complaint to the Wage and Hour Division of the United States Department of Labor.

12. On February 23, 1977 plaintiff filed a charge of discrimination with the Colorado Civil Rights Commission. A copy of this charge was sent to defendant.

13. On March 31, 1977 EEOC assumed jurisdiction over the charge and a copy of this notice was sent to defendant.

14. On May 27, 1977 a Wage and Hour Division investigator met with Mr. Murray Cornell, principal owner of defendant corporation, and his attorney to inform them of the result of the Equal Pay Act charge investigation. Defendant was informed that the Department of Labor had concluded that defendant was in violation and owed plaintiff back pay under the act. On the same day Mr. Cornell gave plaintiff two weeks notice of termination.

15. On June 3, 1977 EEOC notified plaintiff and defendant's attorney that it concluded that it did not have jurisdiction over the charge.

16. On June 10, 1977 plaintiff was terminated by defendant.

17. On October 14, 1977 EEOC reopened plaintiff's case upon receiving additional jurisdictional information as to the number of persons employed by defendant.

18. On October 10, 1977 plaintiff filed a second charge with EEOC alleging that she had been wrongfully discharged by defendant in retaliation for filing charges of discrimination.

19. On October 20, 1977 EEOC notified plaintiff that her second complaint would be deferred to the Colorado Civil Rights Commission for 60 days.

20. On November 2, 1977 EEOC notified plaintiff that it had assumed jurisdiction over her second complaint.

21. On November 21, 1977 plaintiff requested a Notice of Right to Sue on both of her EEOC complaints and the Right to Sue Letters were issued for both charges on November 22, 1977.

22. On December 12, 1977 plaintiff underwent a biopsy on an out-patient basis. Breast cancer was diagnosed.

23. Plaintiff was physically able to work as a registered pharmacist on a full-time basis until February 8, 1978, at which time her physical condition prevented her from working on a full-time basis.

24. Plaintiff died on May 26, 1978.

25. The court granted a motion for substitution of parties on June 30, 1978 substituting Donald Pedreyra, husband of the deceased plaintiff as party plaintiff.

26. After her termination, plaintiff received $3,364 in unemployment compensation benefits charged to the account of defendant, Cornell Prescription Pharmacies, Inc.

## I JURISDICTION

Defendant denies jurisdiction on three grounds, that it is not an "employer" within the meaning of Title VII, that it is not an "employer" under the Equal Pay Act because it does not engage "in commerce" within the meaning of that statute, and that the Fair Labor Standards Act provides no private right of action for retaliatory discharge. Although this court ruled that these jurisdictional issues were resolved in favor of the plaintiff at a hearing on August 4, 1978, defendant's arguments merit discussion at this time.

Section 2000e(b) of Title VII defines employer as follows:

The term "employer" means a person engaging in an industry affecting com-

merce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person  .   .   . .

The requirement of 15 or more employees has been held to constitute a jurisdictional prerequisite. *Hassell v. Harmon Foods, Inc.*, 454 F.2d 199 (6th Cir. 1972).

At trial defendant's accountant, John C. Nielson, testified that during 1976–1977 there were no quarters in which defendant reported 14 or fewer employees on its payroll. Defendant contends that Title VII requires that only full-time employees working on each working day (Monday through Saturday when defendant's stores were open for business) can be counted for satisfaction of the 15 or more employees requirement. In support of its argument, defendant cites *Dumas v. Town of Mt. Vernon*, 436 F.Supp. 866 (S.D.Ala.1977) where the court held that the town had never carried more than twelve persons on its full-time payroll and therefore did not qualify as an "employer" under Title VII. That case, however, is distinguishable in that plaintiff was attempting to include CETA program employees, selected and paid by the CETA office and the court ruled that since the CETA employees were not selected, controlled or paid by the City they could not be considered employees. The employees at issue here are persons who worked less than 40 hours and were hired, controlled and paid by defendant.

It has been consistently held that Title VII is remedial in nature and should be given the broadest interpretation consistent with its purpose. *Parham v. Southwestern Bell Telephone*, 433 F.2d 421 (8th Cir. 1970). In addition, it has been held that liberal construction should also be given to the definition of "employer" so as to carry out the Congressional purpose of eliminating inconvenience, unfairness and humiliation of discrimination. *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir. 1977).

In the debates which preceded the passage of Title VII it was made clear that "the term 'employer' is intended to have its common dictionary meaning" and that employers with part-time or seasonal staffs were intended to be covered by the act "when the number of employees exceeds the minimum figure." 110 Cong.Rec. 7216–7217 (April 8, 1964). Thus courts have focused on the nature of the relationship of the employees and not on the number of hours worked each day. It is also of critical significance that the statute itself does not limit the definition of employee by the number of hours worked each day.

In *Pascutoi v. Washburn-McReavy Mortuary, Inc.*, 11 E.P.D. ¶ 10,442 (D.Minn.1977) the court held part-time workers would be counted as employees even though they did not work every working day in the calendar week since they had been on defendant's payroll for the requisite number of weeks. The rationale in *Pascutoi* is sound and in keeping with congressional intent. Since it was proven at trial that defendant consistently had 14 or more employees on its payroll during 1976–1977, defendant is an employer within the meaning of Title VII and the court has jurisdiction over plaintiff's claims under this statute.

Next defendant contends that it is not an "employer" under the Equal Pay Act of the Fair Labor Standards Act because it does not engage "in commerce" within the meaning of the statute. Section 203(s), 29 U.S.C., provides:

"Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce  .   .   . .

Prior to 1961 retail business like defendant which sold most of its merchandise intrastate was not deemed to be within the purview of the act despite the fact that it sold products originally purchased out of state. *See Bock v. Hoffman*, 110 Colo. 73, 130 P.2d 691 (1942) and *Mile High Poultry Farms, Inc. v. Frazier*, 113 Colo. 338, 157 P.2d 127 (1945). In 1961, however, the act was substantially amended and expanded to

include employers with workers who handled, sold, or otherwise worked on goods that had been moved or produced in commerce. *Reid v. Teutonia Wine & Liquor Mart, Inc.*, 392 F.Supp. 904 (D.Wis.1975).

■ At trial it was proved that defendant purchased approximately forty-two (42) per cent of its supplies, including pharmaceuticals regularly handled by plaintiff during the course of her ten year employment, from out of state establishments. The majority of goods were sold solely within the State of Colorado, though defendant did admit to sales to out of state customers and to occasional sales to persons in transit. Defendant relies on *Schultz v. National Elec. Co.*, 414 F.2d 1225 (10th Cir. 1969) where the court held that interstate movement stops under the Fair Labor Standards Act when merchandise is unloaded on the docks or warehouse floor of the consignee. In *Schultz* the court found that the employees who handled the goods at the warehouse were not engaged in interstate commerce and held that they therefore were not entitled to be paid overtime compensation under the act.

Defendant admits in its brief that the *Schultz* opinion apparently conflicts with the literal language of 29 U.S.C. § 203(s) which provides coverage when employees handle goods that have been moved or produced in interstate commerce. Nevertheless defendant asserts that this court is bound by the Tenth Circuit precedent of the case. Defendant is in error. Four years after the *Schultz* decision the Tenth Circuit decided *Brennan v. Dillon*, 483 F.2d 1334 (10th Cir. 1973), in which it held that an apartment owner was covered by the Fair Labor Standards Act where its employees regularly handled materials which had traveled in interstate commerce, such as paint, light bulbs, cleansers, plumbing fixtures, grass seed and chlorine, thus engaging them in the production of goods for commerce.

While the Act does not define "production," it does define "produced," 29 U.S.C. § 203(j):

"Produced" means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State.

The court's reasoning in *Brennan* is applicable to the case at bar:

Section 203(j) says that an employee is engaged in the production of goods if he "was employed in producing, * * * handling * * * or in any other manner working on such goods." The stipulation of the parties says that the products and merchandise therein mentioned "were regularly handled by defendant's employees as the needs of the business required." The merchandise had moved interstate and the fact that some of it was acquired intrastate is immaterial. [citation omitted] The admitted handling of the merchandise by the employees in the regular course of defendant's business made them engaged in the production of goods for commerce. 483 F.2d at 1337.

Plaintiff as an employee of Cornell Prescription Pharmacies, Inc., regularly handled drugs that were shipped from interstate enterprises and hence she was engaged in the production of goods of commerce within the Act. A covered employer under § 203(s) is one who employs employees engaged in the production of goods for commerce. Thus, it is clear that defendant is covered under the Fair Labor Standards Act and this court has jurisdiction over plaintiff's Equal Pay Act claims.

■ Finally, defendant challenges jurisdiction on the ground that plaintiff does not have a private right to sue for damages resulting from retaliatory discharge under the Equal Pay Act. Plaintiff filed this action on October 11, 1977 and on November 1, 1977 Congress amended 29 U.S.C. § 216(b) to include a private cause of action

-for retaliatory discharge. This amendment became effective on January 1, 1978 and provides:

> Any employer who violates the provisions of section 215(a)(3) [retaliatory discharge] of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal District or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

The question is whether the amendment applies retrospectively where plaintiff alleges that her retaliatory discharge occurred six months before its effective date. If the change is substantive law, retrospective application is not permitted. If the change is procedural, retrospective application is.

A review of the congressional history of this amendment reveals that congress intended only a procedural change. The amendment including a private right of action originated in the Senate version of H.R. 3742, Fair Labor Standards Act amendments of 1977. In a conference report to the House on the proposed amendments the following summary of this new provision was given:

#### REMEDIES

Also included in this bill is a change in the procedure for suits against employers regarding enforcement of the act. As it is now, the Secretary of Labor is required to bring all suits against employers, a lengthy and inefficient process. This amendment now allows employees to bring their own suits against employers and authorizes appropriate legal or equitable relief against any employer who discharges or otherwise discriminates against employees seeking to enforce the act.

—— Cong.Rec. 11,337 (October 20, 1977). The Senate version expanding an individual employee's remedies was ultimately adopted.

When faced with the question of whether the court should apply retrospectively a 1961 amendment to the Fair Labor Standards Act permitting the Secretary of Labor to sue for minimum and overtime compensation, Judge Doyle held that the new amendment affected a remedy and not a substantive right and therefore it should be applied retrospectively. *Goldberg v. M & K Manufacturing Co.,* 230 F.Supp. 151 (D.Colo.1962). In *Goldberg* the court relied on legislative history of the amendment and reasoned:

> The amendment does not impose any new sanction or create any new right and thus defendant can not complain about its retrospective enforcement. In other words, even under the prior law he is obligated to pay the accrued overtime wage. The 1961 amendment effects the remedy and not the right.

Further, the court quoted from *Bowles v. Miller,* 151 F.2d 992, 993 (10th Cir. 1945):

> * * * The remedy provided in one act of Congress for the enforcement of a right may be changed or modified, provided a substantial remedy is left. There is no inhibition against an act of Congress operating retroactively in making reasonable changes in the remedy for the enforcement of a right, provided a reasonable remedy is made available. That clear distinction obtains between acts creating rights and those which merely afford remedies for the enforcement of rights.

230 F.Supp. at 152.

Since it is clear that Congress only intended to amend the remedies provided by the Equal Pay Act allowing individuals to sue directly for damages resulting from retaliatory discharge, the amendment only effects a procedural change and can be retrospectively applied to plaintiff's claims. The court thus has jurisdiction over plaintiff's

claims based on retaliatory discharge under the Equal Pay Act.

## II  WAGE DISCRIMINATION

At the time this action was filed plaintiff was a 48 year old woman pharmacist who had been licensed for 23 years and had been an employee of defendant for an excess of 10 years. She filed charges of sex-based wage discrimination with EEOC, the Colorado Civil Rights Commission and the Wage and Hour Division of the Department of Labor based on the fact that she had consistently been paid less than defendant's male pharmacist employees. She brought this action under Title VII and the Equal Pay Act.

The Equal Pay Act has the narrow purpose of prohibiting sex discrimination in pay between employees doing equal work. Title VII, on the other hand, prohibits sex discrimination in employment opportunities, including compensation. In regard to compensation, the two laws have been held to be coextensive and courts have been directed to harmonize them so that they work together to serve the underlying congressional objective of eliminating employment discrimination. *Schultz v. Wheaton Glass Works,* 421 F.2d 259 (3rd Cir. 1970), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). Moreover, the standard used to determine the legality of wage differentials under the Equal Pay Act is the same as that under Title VII. The Equal Pay Act, 29 U.S.C. § 206(d)(1) provides that:

> No employer . . . shall discriminate, within any establishment . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions . . . . .

"To establish a case under Title VII, it must be proved that a wage differential was based on sex and that there was the performance of equal work for unequal compensation." *Orr v. Frank F. MacNeill & Son, Inc.,* 511 F.2d 166, 171 (5th Cir. 1975), *cert. denied* 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975).

■ It was clearly established at trial that from April, 1974 through June 10, 1977 plaintiff was paid $150 to $450 a month less than all male pharmacists employed by defendant except for one male employee who worked for two months as a pharmacist at $50 a month less than plaintiff was earning. It is plaintiff's allegation that the wage differential was due solely because of her sex.

■ Plaintiff has the burden of proving by a preponderance of the evidence that she performed equal work in a job that required equal skill, effort and responsibility and was performed under similar working conditions. *Wirtz v. Muskogee Jones Store Co.,* 293 F.Supp. 1034 (E.D.Okla.1968).

There is no question that plaintiff had at least equal skill to the male pharmacists employed by defendant. All licensed pharmacists are required by state law to have a degree in pharmacy from an approved college, to have served as interns under the direct supervision of a licensed pharmacist for 2,000 hours and to have passed a state board examination. Section 12–22–106, C.R.S.1973. Not only had plaintiff met all these professional requirements, but she also was designated preceptor by defendant and thereby responsible for supervising the intern pharmacists it employed. Moreover, plaintiff had over ten years experience in working for defendant at the time of her termination whereas the most senior male pharmacist employed by defendant had been working less than three years. Absolutely no evidence was presented at trial suggesting that plaintiff was in any way incapable of performing her duties. The evidence clearly established that plaintiff possessed skills at least equal to those of the male pharmacists employed by defendant.

The second test under the Equal Pay Act is equal effort, which is concerned with "the measurement of the physical or mental exertion needed for the performance of a

job." 29 C.F.R. § 800.127 (1974). While defendant did not use any job descriptions, personnel review, or formal employment contracts, the evidence at trial showed that all pharmacists were basically required to do the same job which consisted of taking telephone orders, waiting on customers, filling prescriptions and helping with the stocking of shelves.

At trial defendant asserted that plaintiff exerted less effort than male pharmacists who performed additional duties. Defendant sought to prove that plaintiff never worked on Saturdays, that she never took emergency night calls, that she never filled doctor's orders, and that she never stocked shelves. These differences in plaintiff's work performance were cited as examples of less than equal effort which defendant contends justified her lower salary.

Mr. Murray Cornell, principal owner of defendant corporation and the person who made all employment and management decisions, testified at trial that he rehired plaintiff in 1973 when he was desperately in need of a pharmacist at his Denver store. He called plaintiff and offered her the job. Plaintiff responded to the offer by asking what the hours would be and indicated that she desired to work only Monday through Friday from eight to five. Mr. Cornell rehired plaintiff assuring her that she would only be required to work a five day week. From her initial hiring, plaintiff worked the five day schedule while young, less experienced male pharmacists divided up the Saturday morning shifts. Mr. Cornell testified that he never asked plaintiff to work on Saturdays. In January, 1977 he told her that she might have to start working Saturday mornings. Plaintiff responded that she would be willing to do so, but Mr. Cornell never made a Saturday work assignment. Thus, from the uncontroverted facts presented at trial, it was established that defendant never requested that plaintiff work on Saturdays nor did defendant explain to her that she would be paid less than less experienced male pharmacists who were assigned Saturday shifts. The defendant's presentation had a distinct aura of hindsight associated with it.

In regard to plaintiff's working hours, it should be noted that while the younger, male pharmacists worked Saturday mornings, their schedules were adjusted accordingly. All pharmacists worked approximately 40 hours a week. While plaintiff did not work on Saturday mornings, she was responsible for opening the Denver store every morning when she was the only pharmacist on duty. As part of her duties while she opened the store, plaintiff was responsible for sending the delivery people out, ordering drugs, handling complaints, as well as filling the prescriptions that were called in early. The early morning openings also imposed an additional hazard for plaintiff since the pharmacy was robbed on occasions when plaintiff was the only employee present.

In *Brennan v. South Davis Community Hospital,* 538 F.2d 859 (10th Cir. 1976) the Tenth Circuit adopted the three-pronged test for determining "equal effort" announced in *Hodgson v. Brookhaven General Hospital,* 436 F.2d 719 (5th Cir. 1970):

> Jobs do not entail equal effort, even though they entail most of the same routine duties, if the more highly paid job involves additional tasks which (1) require extra effort, (2) consume a significant amount of time of all those whose pay differentials are to be justified in terms of them, and (3) are of an economic value commensurate with the pay differential. 538 F.2d at 862.

Thus, employers may not be permitted to frustrate the purposes of the Equal Pay Act by calling for extra duty from male employees only occasionally. *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1049 (5th Cir. 1973). Shift differentials alone cannot justify a wage differential between female and male employees:

> the concept of "working conditions," as used in the specialized language of job evaluation systems, simply does not encompass shift differentials. *Corning Glass Works v. Brennan,* 417 U.S. 188 at 202, 94 S.Ct. 2223 at 2232, 41 L.Ed.2d 1 (1974).

It was also demonstrated at trial that plaintiff, along with the other pharmacists, helped stock shelves when necessary and that in any event shelf stocking did not require more than two hours a week from any given pharmacist. Under the "equal effort" test the incidental stock shelving did not consume a significant amount of time and cannot be cited by defendant as a basis for pay differential.

Plaintiff was neither asked nor required to take emergency night calls by defendant. Such calls came on a sporadic basis from nursing home customers. Like shelf stocking, these duties did not consume a significant amount of the pharmacists' time. The evidence produced at trial also showed that newly hired interns were usually assigned by Mr. Cornell to fill doctor's orders (as opposed to individual customer orders). Testimony given by male pharmacists at trial disclosed that plaintiff filled as many total prescriptions as any other pharmacist. While defendant attempted to show that plaintiff filled fewer new prescriptions on certain Mondays, this evidence did not detract from plaintiff's overall productivity. A former male employee testified that plaintiff filled more refill prescriptions and generally assisted more elderly, long-time customers than the younger male pharmacists. Defendant's accountant admitted that defendant did not keep any records of the number of refill prescriptions filled. There was no credible evidence of plaintiff's productivity other than employee testimony.

In summary, there was no credible evidence produced that showed any thing other than equal effort and similar job duties of plaintiff and the male pharmacists. It is not to be overlooked that the criticisms of plaintiff offered by defendant to show dissimilarity in job performance and job duties were at best peripheral to the exercise of the essential employment requirement, viz., practicing the profession of pharmacy. It was clearly shown that besides being far more experienced than the male pharmacists, plaintiff also assumed additional responsibilities that would have logically made her a more valued employee than the younger men. Plaintiff served as preceptor and she was designated as manager of the Denver store by defendant on several occasions. Defendant asserted that this manager designation was only for records submitted to the Colorado State Board of Pharmacy and entailed no additional duties on plaintiff's behalf. However, it is important to recognize that as a requirement for maintaining a pharmacy license under Colorado law, "a pharmacy shall be under the direct charge of a manager who is a pharmacist, and who is not the manager of any other pharmacy, who has the direct control of the pharmaceutical affairs of said pharmacy." Section 12–22–113(1), C.R.S.1973. While Mr. Cornell is a licensed pharmacist, he could only be designated a manager of one of his two stores for licensing purposes. Thus, it was necessary for him to have a manager of the other store in order to maintain a state pharmacy license. This clearly demonstrates that having a reliable, experienced pharmacist like plaintiff who could be designated as manager to the State Pharmacy Board provided defendant with a definite economic benefit that could only enhance her value as an employee and could only support a higher salary than that given to other less experienced male pharmacists. Defendant's efforts to minimize the statutory requirement and plaintiff's managerial designation are more demeaning than they are persuading.

Defendant's asserted reasons for paying plaintiff less do not withstand scrutiny. There is no evidence that plaintiff had ever been previously warned or otherwise counseled by defendant concerning her general job performance. It is not reasonable to believe that defendant would have permitted plaintiff to continue in its employ for more than ten years without taking any kind of personnel action if her performance was in fact unsatisfactory. Nor is it reasonable to believe that the quality of her performance would have suddenly deteriorated after a long period of satisfactory performance. Based on these considerations and the evidence presented at trial, I conclude that plaintiff's sex was a determi-

native factor in defendant's decision to compensate her at a lower rate than that paid to male pharmacists. Plaintiff met her burden of proving that her job required equal skill and that she performed it by exerting at least equal effort and responsibility under similar working conditions as did the male pharmacists who were paid more by defendant.

█ Since plaintiff has carried her burden of showing that an employer pays one sex more than workers of the opposite sex, the burden of going forward shifts to the employer who must show that the differential is justified under one of the Equal Pay Act's four exceptions: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any factor other than sex. *Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

Defendant did not utilize a seniority system. If it had, plaintiff would have been entitled to additional pay since her seniority far exceeded that of any of the male pharmacists who were paid more. Defendant did not employ a formal merit system. At trial Mr. Cornell testified that he set salaries subjectively and made an effort to pay pharmacists what he felt they were worth. This subjective nature of setting salaries resulted in an anomaly whereby plaintiff, who was more experienced, performed additional tasks and yet was paid less. Nor did defendant utilize any production quotas as a method of determining salaries. Moreover, at trial defendant failed to produce any evidence that the pay differential between male pharmacists and plaintiff was based on any other legitimate factor. Defendant's defense that it was justified in paying plaintiff less was simply not supported by the evidence and can only be viewed as a pretext for sex-based discrimination. Accordingly, I conclude that plaintiff was a victim of wage discrimination and entitled to recover under both Title VII and the Equal Pay Act.

## III RETALIATORY DISCHARGE

Plaintiff alleges that she was discharged from her employment with defendant as a result of having filed charges with EEOC based on wage discrimination. Retaliation is unlawful under both Title VII and the Equal Pay Act and both provide remedies to a plaintiff in a private action. 42 U.S.C. § 2000e–3; 29 U.S.C. §§ 215(a)(3) and 216(b).

Plaintiff filed her charge of sex-based wage discrimination with EEOC on January 1, 1977 and EEOC referred the matter to the Wage and Hour Division of the Department of Labor. The Wage and Hour Division began its investigation on May 3, 1977. On May 27, 1977 a Department of Labor investigator, Tom Everding, held a final conference with Mr. Cornell and his attorney to discuss the results of this investigation. Mr. Everding testified at trial that this meeting was held in the early afternoon of the 27th when he informed Cornell that defendant had been found to be in violation of the Equal Pay Act in regard to plaintiff's salary. Since a violation had been determined, defendant was advised that it was liable for back wages owed to plaintiff. In addition, Everding requested that defendant raise plaintiff's salary to an amount equal to that of the male pharmacists employed by defendant in order to insure future compliance with the Equal Pay Act. Mr. Cornell advised Mr. Everding that defendant denied it was liable for back wages and refused to pay them. Defendant also refused to raise plaintiff's salary. At the conclusion of this conference, Mr. Everding warned Mr. Cornell that any retaliatory action taken by defendant against plaintiff would constitute a further violation of the Equal Pay Act.

Later on that same afternoon Mr. Cornell went to the Denver store and gave plaintiff two weeks notice of termination. Mr. Cornell did not give plaintiff any reasons for this action. Plaintiff believed that her discharge was in retaliation for the charges she had filed and called Mr. Everding a few days later telling him that she had been fired.

■ A showing by plaintiff that she was discharged following protected activities of which the employer was aware establishes a prima facie case of retaliatory dismissal and the burden of going forward shifts to the employer to show legitimate nondiscriminatory reasons for the dismissal. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff in the instant case has established a prima facie showing of retaliation. Defendant's asserted reasons for her discharge must now be examined.

■ At trial defendant attempted to show that the fact it terminated plaintiff on the same afternoon following the meeting with Everding was purely coincidental and that plaintiff was discharged because defendant had experienced a downturn in business. According to defendant, this decrease in profits necessitated a reduction in number of pharmacists. The decision to terminate plaintiff was allegedly based on her poor work performance which made her the least profitable pharmacist in defendant's employ at the time.

The evidence at trial showed that defendant's business level in May, 1977, when plaintiff was discharged was approximately at the same level as it was in May, 1976. Defendant failed to show that it had experienced a significant downturn in business. Again, it is important to restate that plaintiff was not given any indication by defendant that her performance was inadequate after she filed the EEOC charges. Defendant's offered proof of plaintiff's substandard performance was simply not persuasive. When an employee files discrimination charges and is eventually fired for conduct similar to that in which she engaged prior to filing a charge, a finding of retaliation is warranted. *Francis v. American Telephone & Telegraph Co.*, 55 F.R.D. 202 (D.D.C. 1972). There was no evidence presented to show that plaintiff's level of performance changed between January, 1977 when she filed her administrative charge and May, 1977 when she was given notice of termination. The only significant occurrence during this period was the Wage and Hour Division's decision a few hours before plaintiff was fired.

Despite the fact that defendant claims to have relied on the advice of counsel that firing plaintiff was not illegal, defendant and its attorney were warned of the consequences of retaliatory action on the same day defendant decided to dismiss plaintiff. Moreover, it is well settled that good faith is no defense to retaliatory discharge. As the Supreme Court stated in *Albermarle Paper Co. v. Moody*, 422 U.S. 405, at 422–423, 95 S.Ct. 2362, at 2374, 45 L.Ed.2d 280:

> If back pay were awardable only upon a showing of bad faith, the remedy would become a punishment for moral turpitude, rather than a compensation for workers' injuries. This would read the "made whole" purpose right out of Title VII, for a worker's injury is no less real simply because his employer did not inflict it in "bad faith." Title VII is not concerned with the employer's "good intent or absence of discriminatory intent" for "Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation." [Citations omitted.]

In conclusion, it defies common business sense that defendant would have maintained plaintiff in its employ for over ten years if her work performance was unsatisfactory. The fact, among others, that plaintiff remained in defendant's employ until she was given notice of termination on May 27, 1977, the very day defendant was told it had been found in violation of the Equal Pay Act, impels the conclusion that her work was adequate and that she was fired because she had filed discrimination charges. Given my primary and exclusive responsibility for determining the credibility of witnesses and having observed and listened to the witnesses in this case, I am convinced that Mr. Cornell's testimony in this regard falls substantially below any known test of credibility. The reasons offered by defendant are flimsy and pretextual.

## IV  DAMAGES

Having prevailed on her claims of sex-based wage discrimination and retaliatory discharge, plaintiff is entitled to damages. Under the Equal Pay Act, an employer found to have violated the Act is liable to the employee for the amount of unpaid wages, and an equal amount as liquidated damages. 29 U.S.C. § 216(b) (1978 Supp.). Section 706(g) of Title VII also provides for relief, including back pay, upon the court's finding of illegal discrimination. Under Title VII an employer is liable for back pay for a period of two years prior to the plaintiff's filing a charge with EEOC. The "Portal-to-Portal" statute of limitations, 29 U.S.C. § 255, also imposes a two year limitation on back wages unless the violation is proven to be willful, in which case back wages can be recovered for three years prior to filing suit.

Plaintiff asserts that she is entitled to back wages for a period of three years before this action was filed on the grounds that defendant's illegal wage discrimination was willful. The first case which attempted to define a standard for determining willfulness under the Equal Pay Act, held that the test was whether the employer knew or suspected his actions might violate the Fair Labor Standards Act; in other words, whether the employer knew that the Fair Labor Standards Act was "in the picture." *Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139, 1142 (5th Cir. 1972), *cert. denied sub nom. Jiffy Farms, Inc. v. Coleman,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). This test has been applied by courts since the *Coleman* decision. *See, Herman v. Roosevelt Federal Savings & Loan Ass'n,* 432 F.Supp. 843 (E.D.Mo.1977), *aff'd* 569 F.2d 1033 (8th Cir. 1978).

Although Cornell denied having any awareness of the Equal Pay Act or its possible coverage with respect to pharmacists, it was demonstrated at trial that defendant had been previously found in violation of the minimum wage provisions of the Fair Labor Standards Act in 1971 in regard to delivery truck drivers. This very fact should have alerted defendant that it should scrutinize its wage policies in light of the Fair Labor Standards Act. Plaintiff showed that defendant had copies of the Fair Labor Standards Act, the regulations and quick reference guide for employers in its files at the time of her employment. By having copies, defendant had at least constructive notice of the statute and its requirements. Moreover, it was demonstrated that defendant was fully aware that it was paying male pharmacists at a consistently higher rate than plaintiff and yet Mr. Cornell failed even to discuss or attempt to explain its salary policy to plaintiff. The course of behavior pursued by defendant after it became aware of plaintiff's claims and the finding of violation by the Wage and Hour Division also supports a conclusion that its practice of paying her less was not inadvertent or accidental. Thus, defendant's illegal behavior was willful within the meaning of the Equal Pay Act and plaintiff is entitled to recover back wages for the three year period preceding the filing of this complaint on October 11, 1977.

Plaintiff argues that damages for back wages should be computed by subtracting her wages from the amount paid to the highest paid male pharmacist. I don't think this is any more fair than using the lowest paid male pharmacist's wages as the reference point. Rather, I have taken the average amount paid to male pharmacists during each pay period and subtracted the amount paid to plaintiff. The evidence in the form of defendant's pay records shows that the difference between plaintiff's salary and the average salaries per pay period of male pharmacists from October, 1974 through February 8, 1978 when the parties stipulated that plaintiff was no longer able to work on a full time basis due to her physical condition was $22,836 which plaintiff is entitled to recover as back wages under the Equal Pay Act.

Defendant argues that any award of back pay to plaintiff must be diminished because of her alleged failure to mitigate damages. Defendant contends that plaintiff failed to exercise diligent efforts in seeking new employment after be-

ing fired. A deduction of damages for failure to mitigate is within the trial court's discretion. In *Brito v. Zia Co.,* 478 F.2d 1200, 1204 (10th Cir. 1973) the court stated that a trial court

> . . . may exercise its discretion in finding that the [plaintiff's] should have and could have exercised greater diligence in seeking other employment.

Irrespective of discretion, the evidence fails to support defendant's position. Plaintiff sought new employment by making at least three contacts a week with potential employers. Plaintiff made these contacts by telephone and in person. Defendant would have plaintiff seek employment in other ways. Defendant asserts that plaintiff should have listed her name with commercial employment agencies and wholesale drug houses if she was serious about finding a new job. However, at trial Mr. Cornell testified that he initially hired plaintiff in 1963 after she walked into his Lakewood store and asked him if any pharmacist positions were available. Cornell needed a pharmacist and plaintiff was hired on the spot. This is exactly the same kind of job seeking efforts plaintiff exerted after she was fired. Where it has been shown that plaintiff made the same kinds of efforts to seek reemployment after she was fired as when she initially sought employment with defendant, defendant has failed to show a lack of reasonable effort in mitigating damages by seeking reemployment. Given plaintiff's undisputed efforts, I decline to reduce the award of back wages.

■ Under Section 216(b) of the Equal Pay Act a plaintiff who demonstrates she is entitled to back wages under the statute may also be awarded an equal amount as liquidated damages. Such an award is discretionary and as the court stated in *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429 (D.D.C.1977) *cert. denied* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978), an employer has a very difficult standard to meet in showing that it should not be liable for the additional amount:

> Congress reacted by an amendment conferring the present discretion on the courts to limit or deny liquidated damages if the employer could meet the "substantial burden" of proving that his failure to comply was in good faith and also was predicated on reasonable grounds for a belief that he was in compliance. If the employer cannot convince the court in these respects, an award of liquidated damages remains mandatory; and even if the employer's presentation is persuasive the court may still exercise its discretion to grant liquidated damages totally or partially. [footnotes omitted] 567 F.2d 464–465.

From the evidence presented, it was shown beyond question that defendant violated the act willfully by its retaliatory discharge of plaintiff and its refusal to compensate plaintiff at rates equal to that received by male pharmacists. Defendant has failed to prove that it acted in good faith with respect to plaintiff. Defendant has failed to prove any other ground for denying an award of liquidated damages. Accordingly, plaintiff is hereby awarded such liquidated damages.

■ Defendant also contends that liquidated damages are barred by the Colorado Survival Statute, §§ 13–20–101 *et seq.,* C.R. S.1973 which prohibits the recovery of "penalties" in an action brought by a surviving spouse. Defendant's arguments are without merit. It has long been established that liquidated damages under the Fair Labor Standards Act are not penal in nature and the purpose of such an award

> constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living "necessary for health, efficiency, and general well-being of workers" and to the free flow of commerce, that double payment must be made in the event of delay in order to ensure restoration of the worker to that minimum standard of well being. [citations omitted] *Brooklyn Bank v. O'Neil,* 324 U.S. 697 at 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945).

Since the nature of liquidated damages under the Act is compensatory rather than

penal, the survival statute does not bar the award to plaintiff.

The next issue concerning damages is whether defendant is entitled to offset the amount received by plaintiff in unemployment benefits from the total amount of damages. Most courts which have rejected such a deduction have reasoned that such benefits are collateral to back wages and are awarded by the state in furtherance of a separate social policy. *See generally, Abron v. Black & Decker Mfg. Co.,* 439 F.Supp. 1095 (D.Md.1977); *Tidwell v. American Oil Co.,* 332 F.Supp. 424 (D.Utah 1971); and the awards recently made by Judge Matsch in *Dow Chemical Co. v. Bertha A. Watts,* Civil Action No. 76–M–1130 (D.Colo. 1977) and *Calbert v. Rocky Mtn. Osteopathic,* Civil Action No. 75–M–709 (D.Colo.1976). This rationale is particularly persuasive in the instant case where under the Colorado Employment Security Act, § 8–73–110(2), C.R.S.1973, an employee who receives an award of back pay must repay the Colorado Division of Employment and Training all benefit payments made for the period during which a back pay award was received. Defendant's argument that plaintiff's unemployment benefits should be deducted from her total amount of damages is rejected.

Finally, I must determine whether plaintiff is entitled to any additional damages for lost fringe benefits or to prejudgment interest. It was clearly proven at trial that plaintiff lost her medical insurance benefits and that she had to replace her coverage by paying $115.04 per month from June, 1977 to early February, 1978. The total cost of replacing the medical insurance was $920.32. She is entitled to recover that amount from defendant in this action.

In addition, plaintiff attempted to prove that she lost $2,000 in term life insurance benefits as a result of her termination. This loss somehow resulted from the policy provisions governing conversion from group to private coverage. However, plaintiff failed to show by a preponderance of the evidence that she suffered this loss as a direct result of defendant's actions and thus she cannot recover compensation for these benefits.

Plaintiff also prayed for an award of interest on her back wages. Normally, prevailing plaintiffs in Title VII actions are entitled to a reasonable rate of interest on an award of back pay in order to compensate them for the loss of the use of the money during the back pay period. However, plaintiff in this action has also prevailed under the Equal Pay Act and is entitled to liquidated damages in addition to back pay. As it has been noted previously, the underlying purpose for the liquidated damage provision was to compensate an employee for the loss of the use of his wages between the time of the violation and the court ordered award. As the court held in *Masters v. Maryland Management Co.,* 493 F.2d 1329 (4th Cir. 1974), it is a proper exercise of discretion for a trial court to deny prejudgment interest where it has made an award of liquidated damages. To award plaintiff both prejudgment interest and liquidated damages would result in double recovery. Therefore, I decline to order an award of prejudgment interest.

## V ATTORNEY'S FEES

Section 706(k) of Title VII provides that the District Court, "in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs of the action." In *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), an action brought under Title VII, the Supreme Court held that while the Act called for the District Court to exercise its discretion in the award of attorney's fees, the great public interest in having injunctive actions brought to eliminate discrimination in public accommodations could be vindicated only if successful plaintiffs, acting as "private attorneys general," were awarded attorney's fees in all but very unusual circumstances.

In addition to the private attorneys general concept, congressional history shows a desire by the legislature to remove impediments such as the cost of hiring attorneys from resort to the statutory remedies here

at issue. Otherwise, impecunious plaintiffs might not avail themselves of the relief afforded. Absent circumstances showing gross unfairness or significant imbalance in the adversary process, I am not inclined to deny attorney fees to a successful plaintiff or defendant. The prospect of such additional cost following the event will I hope, like in England, serve as an inducement to parties litigant to reach resolution of their differences on a more amicable basis.

Therefore, in furtherance of public policy and the views expressed, plaintiff here is entitled to attorney's fees and costs. Determination of the amount of fees and costs will be set for hearing. Counsel are encouraged to stipulate to amount.

## VI  CONCLUSION

Judgment shall enter in favor of plaintiff and against defendant in the amount of $46,592.32 plus costs and attorneys fees. A hearing to determine attorney fees shall be set prior to the entry of judgment. Plaintiff's costs shall be determined upon submission to the Clerk of the Court of an acceptable bill of costs. Interest shall run from the date of judgment.